
U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEF:EMR
F. #2026R00004

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 10, 2026

<u>By ECF and E-Mail</u>

The Honorable Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11218

      Re:    United States v. Justin McMillan, et al
             <u>Criminal Docket No. 26-49 (FB)</u>

Dear Judge Cross-Goldenberg:

      On March 9, 2026, a grand jury sitting in the Eastern District of New York returned the above-captioned indictment charging the defendants Justin McMillan ("McMillan") and Justin Colon ("Colon") with one count of conspiracy against rights, in violation of Title 18, United States Code, Section 241, and one count of deprivation of rights under color of law, in violation of Title 18, United States Code, Section 242, for stealing from a victim, and charging McMillan with one additional count of deprivation of rights under color of law, in violation of Title 18, United States Code, Section 242, for groping the victim's naked buttock and breast.

      Earlier today, the defendants were arrested by agents from the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD"). Later this afternoon, the defendants will make their initial appearances in the Eastern District of New York. The government respectfully submits this letter in support of its motion for the Court to impose significant, secured bonds and appropriate conditions of release to reasonably assure the appearance of defendants in court and to ensure the safety of the community.

I. <u>Background</u>

      The government proffers the following facts regarding the charged crimes.[1] On the evening of July 19, 2024, the defendants were working on duty as NYPD officers in the 115 Precinct when they responded to a 311 call for prostitution at 37-32 89th Street in Queens, New

---

[1] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.

York (the "Brothel") around 8:40 p.m. When the defendants arrived, they noted in their activity logs that the situation was already resolved. Instead, they shut off their body-worn cameras and approached a woman who exited the Brothel; their interactions with the woman outside the Brothel were captured on surveillance footage from outside the building. Ultimately, the defendants directed that woman to go back into the Brothel with them and stole the key to the building and cash from her purse. The defendants then left the area and continued their tour without making any reports or documenting that they had taken property.

Approximately eight hours later, at about 4:50 a.m. on July 20, 2024, the defendants returned to the Brothel, unlocked the door to the premises with the stolen key and found Jane Doe, the victim of the charged crimes, engaging in a prostitution date with a male customer. Jane Doe was naked on a bed with the customer when the officers entered. The officers turned off the lights and looked around with their flashlights. The customer fled, and the defendants approached Jane Doe, who was still naked. As defendant Colon stood nearby, defendant McMillan went into Jane Doe's purse and stole approximately $200 in front of her; McMillan then approached Jane Doe from behind as she stood, naked, next to the bed and groped her bare buttock and breast. Defendant Colon used his flashlight to show Jane Doe where her clothes were, and she scrambled to get dressed and ran out the door.

Video surveillance from outside the Brothel captured the defendants' entry into the Brothel, followed by the customer running out and Jane Doe fleeing moments later.[2] The defendants then finished their tours and returned to the 115 stationhouse without ever reporting this incident to anyone or filing any paperwork about the incident.

Legal Standard

In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." Id. (citation omitted). "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." Id.

The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

---

[2] Jane Doe called 911 to report this incident, leading to an investigation that resulted in the defendants' arrest in Queens County in March 2025. The defendants subsequently resigned from the NYPD. Although the defendants were initially charged by the Queens Count District Attorney's Office with several crimes including burglary, forcible touching and official misconduct, those charges have since been dismissed.

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. This is because bail hearings are typically informal affairs, not substitutes for trial or discovery. Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004) (internal citations and quotation marks omitted).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "the person's character"; and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

II. The Court Should Set a Substantial Secured Bond Along with Appropriate Conditions To Ensure the Safety of the Community and the Defendants' Appearance in Court

The government respectfully submits that McMillan and Colon should be released only upon the issuance of a substantial secured bond along with the imposition of appropriate conditions to ensure that they do not flee or endanger the community.

First, as set forth above, the offenses are serious and the defendants face severe penalties if convicted at trial. "The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022). Here, if the defendants are convicted at trial, they face up to 10 years in prison on count one. See 18 U.S.C. § 241.

Second, the evidence of the defendants' guilt is strong and includes the anticipated testimony of several witnesses, video surveillance, a 911 recording, NYPD records and other documents and records. Where the weight of the evidence is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight." Zhang, 55 F.4th at 151; United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee.").

Third, the history and characteristics weigh in favor of imposing stringent conditions of release. While the defendants have no known prior criminal history, the evidence shows that they carefully planned their entry into the Brothel and their theft from Jane Doe.

3

Once they were inside, moreover, McMillan physically groped Jane Doe's naked body for his own pleasure and to leverage his power over her. The evidence further shows that the defendants were committed to maintaining the secrecy of their actions and took efforts to conceal what occurred during this incident.

Finally, given these factors and the likelihood that a conviction will result in lengthy sentence for the defendants, the defendants also pose a risk of flight. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."). In light of the defendants' previous compliance with the conditions of their release in Queens County, the government is not seeking detention; however, it is worth noting that the consequences that the defendants are now facing are different than those they would have faced in Queens County.

For all of these reasons, the government respectfully submits that significant, secured bonds and appropriate conditions of release are necessary to reasonably assure the appearance of defendants in court and to ensure the safety of the community.

III. Conclusion

For the reasons set forth above, the government respectfully submits that the Court should only release McMillan and Colon upon the execution of a substantial, secured bond, with stringent conditions of release. Such terms are necessary to ensure that the defendants neither flee nor engage in further criminal activity harmful to the community.

 Respectfully submitted,

 JOSEPH NOCELLA, JR.
 United States Attorney

By: /s/
 Erin Reid
 Assistant U.S. Attorney
 (718) 254-7000

cc: Clerk of the Court (by ECF)
 Counsel of Record (by ECF)